THE STATE EX REL. MAGER *v.* STATE TEACHERS
RETIREMENT SYSTEM OF OHIO.

**[Cite as *State ex rel. Mager v. State Teachers Retirement Sys. of Ohio,***
**123 Ohio St.3d 195, 2009-Ohio-4908.]**

*Mandamus — Disappearance and eventual declaration of death of recipient of*
*state retirement benefits — Abuse of discretion — Benefits to be paid to*
*estate — Writ granted.*

(No. 2009-0406 ─ Submitted August 11, 2009 ─ Decided September 23, 2009.)

IN MANDAMUS.

_____

**Per Curiam.**

**{¶ 1}** This is an original action for a writ of mandamus to compel a public-employee retirement system to pay to the estate of the beneficiary certain retirement benefits that had been withheld from the time the decedent disappeared until the date she was declared dead. Because the retirement system abused its discretion in withholding these payments, we grant the requested writ of mandamus.

### Facts

*Receipt of Retirement Benefits*

**{¶ 2}** In 1978, Richard Watzulik retired from respondent, State Teachers Retirement System of Ohio. Richard selected a joint and survivor annuity with his wife, Violet, as the beneficiary. See R.C. 3307.60(A). Under this plan, Richard would receive a lesser retirement benefit for his lifetime, and upon his death, Violet would receive a benefit for her lifetime. In 1989, after Richard died, Violet began receiving these retirement benefits.

*Withholding of Benefits and Decree Declaring Death*

{¶ 3}  In March 2000, Violet disappeared.  In 2001, a Florida probate court appointed Robert M. Elliott as the plenary guardian of Violet's property, and he requested that the retirement system forward her retirement-benefit payments to him.  The retirement system withheld the payments.

{¶ 4}  In September 2006, a Florida probate court declared Violet deceased pursuant to Fla.Stat. 731.103.  Section 3 of this statute provides that a person "who is absent from the place of his of her last known domicile for a continuous period of 5 years and whose absence is not satisfactorily explained after diligent search and inquiry is presumed dead."  This provision is comparable to R.C. 2121.01(A)(1), which provides that, in general, a presumption of death exists "[w]hen the person has disappeared and been continuously absent from his place of last domicile for a five-year period without being heard from during the period."

*Request for the Payment of Benefits to the Estate*

{¶ 5}  In January 2007, the retirement system, being notified of the presumption of Violet's death, advised Elliott that Violet had been "entitled to benefits in the amount of $152,774.10 for the months of March 2001 through September 2006," and "[s]ince these funds were not issued prior to [Violet's] death, [her children] Eileen Mager and Carl Richard Watzulik are entitled to these funds as beneficiaries."

{¶ 6}  Later that year, however, the retirement system changed its position and advised Elliott that it would not pay Violet's estate any of the withheld benefit payments because "[a]bsent proof that Violet Watzulik was in fact alive during the period that her benefits were held, [the retirement system] is not authorized to issue any further benefits from the account."

{¶ 7}  The Florida probate court appointed relator, Eileen Mager, Violet's daughter, as the decedent's estate's personal representative.  Mager requested that

the retirement system pay to the estate the withheld retirement-benefit payments, but the retirement system refused.

*Florida Case*

{¶ 8}   In February 2008, Mager filed an action in a Florida court seeking to recover the withheld payments from the retirement system.  The retirement system filed a motion to dismiss the case because Mager's remedy was by way of an action for a writ of mandamus in this court.  Mager subsequently dismissed the case.

*Mandamus Case*

{¶ 9}   In February 2009, Mager filed this action for a writ of mandamus to compel the retirement system to pay her mother's estate the retirement-benefit payments due from the March 2001 date that the system withheld payment until the September 2006 date of the Florida decree declaring Violet deceased. After the retirement system filed an answer and a motion for judgment on the pleadings, the court granted an alternative writ, and the parties submitted evidence and briefs.  *State ex rel. Mager v. State Teachers Retirement Sys. of Ohio*, 121 Ohio St.3d 1496, 2009-Ohio-2511, 907 N.E.2d 321.

{¶ 10} This cause is now before the court for our consideration of the merits.

**Legal Analysis**

*Mandamus to Correct an Administrative Abuse of Discretion*

{¶ 11} Mager requests a writ of mandamus to compel the retirement system to pay her mother's estate the retirement benefits it withheld during the time her mother was missing before being declared dead.  "[M]andamus is an appropriate remedy where no statutory right of appeal is available to correct an abuse of discretion by an administrative body."  *State ex rel. Pipoly v. State Teachers Retirement Sys.*, 95 Ohio St.3d 327, 2002-Ohio-2219, 767 N.E.2d 719, ¶ 14.  Because there is no statutory right of appeal from the retirement system's

determination that Violet's estate is not entitled to the sums collected in her retirement account between her disappearance and declaration of death, mandamus is an appropriate remedy. Cf. *State ex rel. Shisler v. Ohio Pub. Emps. Retirement Sys.*, 122 Ohio St.3d 148, 2009-Ohio-2522, 909 N.E.2d 610, ¶ 11. To prove an abuse of discretion, Mager must establish that the retirement system's decision was unreasonable, arbitrary, or unconscionable. See *State ex rel. Schachter v. Ohio Pub. Emps. Retirement Bd.*, 121 Ohio St.3d 526, 2009-Ohio-1704, 905 N.E.2d 1210, ¶ 25.

*R.C. 2121.04*

{¶ 12} As her husband's beneficiary, Violet began receiving retirement benefits pursuant to R.C. 3307.60. Upon notice of her disappearance, the retirement system withheld payments. When this disappearance met the requirements under Florida's presumed decedents' provisions, she was declared dead by the Florida probate court. See Fla.Stat. 731.103(3); R.C. 2121.01(A)(1). Under R.C. 2121.04(A), "[i]f satisfied that a presumption of death has been established, as provided in section 2121.01 of the Revised Code, the probate court shall so decree."

{¶ 13} This case involves the effect of the death decree. R.C. 2121.04(B) provides, "The death of such presumed decedent *shall for all purposes under the law of this state* be regarded as having occurred as of the date of such decree." (Emphasis added.)

{¶ 14} In construing this statute, "our paramount concern is the legislative intent" in enacting it. *State ex rel. Steele v. Morrissey*, 103 Ohio St.3d 355, 2004-Ohio-4960, 815 N.E.2d 1107, ¶ 21. To discern this intent, we must "read words and phrases in context according to the rules of grammar and common usage." *State ex rel. Lee v. Karnes*, 103 Ohio St.3d 559, 2004-Ohio-5718, 817 N.E.2d 76, ¶ 23; *Gross v. FBL Fin. Servs., Inc.* (2009), ___ U.S. ___, 129 S.Ct. 2343, 2350, 174 L.Ed.2d 119, quoting *Engine Mfrs. Assn. v. S. Coast Air Quality Mgt. Dist.*

4

(2004), 541 U.S. 246, 252, 124 S.Ct. 1756, 158 L.Ed.2d 529 (" 'Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose' ").

{¶ 15} "All" means "every" or "any whatever," and "purpose" means "[a]n objective, goal, or end." See Black's Law Dictionary (9th Ed.2000) 1356; Webster's Third New International Dictionary (2002) 54.

{¶ 16} Because R.C. 2121.04(B) is phrased in broad, sweeping language, we must accord it broad, sweeping application. *State ex rel. Colvin v. Brunner*, 120 Ohio St.3d 110, 2008-Ohio-5041, 896 N.E.2d 979, ¶ 49; *State ex rel. Ohio Democratic Party v. Blackwell*, 111 Ohio St.3d 246, 2006-Ohio-5202, 855 N.E.2d 1188, ¶ 14, quoting *Consumer Electronics Assn. v. Fed. Communications Comm.* (C.A.D.C.2003), 347 F.3d 291, 298 ("As United States Supreme Court Chief Justice John G. Roberts Jr. previously observed in a unanimous opinion for the United States Court of Appeals for the District of Columbia Circuit, 'the Supreme Court has consistently instructed that statutes written in broad, sweeping language should be given broad, sweeping application' ").

{¶ 17} Manifestly, the plain language of R.C. 2121.04(B) dictates that the decedent was alive as a matter of law until September 2006, when she was declared dead by the Florida probate court. The determination of when the decedent was alive and thus entitled to retirement benefits is certainly a "purpose" under state law.

*State ex rel. Hammond v. Pub. Emps. Retirement Sys.*

{¶ 18} The retirement system argues that our decision in *State ex rel. Hammond v. Pub. Emps. Retirement Sys.* (1972), 29 Ohio St.2d 192, 58 O.O.2d 403, 280 N.E.2d 904, requires a contrary result.

{¶ 19} In *Hammond*, we denied a writ of mandamus to compel the Public Employees Retirement System to pay benefits to a retiree's trustee after the

retiree's disappearance.  In so holding, we construed a previous version of R.C. 2121.04, which provided:

**{¶ 20}** "If satisfied, upon such hearing [in the probate court], that the legal presumption of death is made out, the court shall so decree, and the presumption of death shall be regarded as having arisen as of the date of such decree."  G.C. 10509-28, 114 Ohio Laws, Part I, 407.

**{¶ 21}** In our five-to-two decision in *Hammond*, we reasoned that the presumption arising under the former version of R.C. 2121.04 was for "certain purposes," and therefore, the presumption could not establish the existence of actual life before the decreed death:

**{¶ 22}** "Marjorie Hammond's right to receive payments from the respondent is a personal right, continuing only during her actual lifetime. Although for certain purposes, the Presumed Decedents' Act provides that the 'presumption of death shall be regarded as having arisen as of the date of such decree' (R.C. 2121.04), such 'presumption' does not prove the existence of actual life prior to the decree, so as to enable a third person to receive property through or on behalf of the 'missing' person."  *Hammond*, 29 Ohio St.2d at 194, 58 O.O.2d 403, 280 N.E.2d 904.

**{¶ 23}** In assessing the impact of the current amendment to R.C. 2121.04, which became effective two years after our decision in *Hammond*, "[w]e must presume that the General Assembly knew of our decision" when it repealed the former version that we interpreted in that case.  *State v. Ferguson*, 120 Ohio St.3d 7, 2008-Ohio-4824, 896 N.E.2d 110, ¶ 22.  " 'When an existing statute is repealed and a new statute upon the same subject is enacted to include an amendment, as in this case, it is presumed that the Legislature intended to change the effect and operation of the law to the extent of the change in the language thereof.' "  *Greenville Law Library Assn. v. Ansonia* (1973), 33 Ohio St.2d 3, 6, 62 O.O.2d

169, 292 N.E.2d 880, quoting *Malone v. Indus. Comm.* (1942), 140 Ohio St. 292, 299, 23 O.O. 496, 43 N.E.2d 266.

{¶ 24} By repealing the previous version of R.C. 2121.04(B) and specifying in the amended version that the date of the probate court decree declaring the presumed decedent's death shall be regarded as the date of death "for all purposes under the law of the state" and not simply for the "certain purposes" noted in *Hammond*, it is evident that the General Assembly, in effect, legislatively overruled our holding in *Hammond*.

{¶ 25} Therefore, *Hammond* is not controlling in our interpretation of the current version of R.C. 2121.04.

*Liberal Construction*

{¶ 26} Finally, even if we were to hold that the statute is ambiguous, this interpretation of R.C. 2121.04(B) is consistent with the axiom that we must read pension statutes "liberally in favor of the interests of the public employees and their dependents that the pension statutes were designed to protect." *State ex rel. Solomon v. Police & Firemen's Disability & Pension Fund* (1995), 72 Ohio St.3d 62, 65, 647 N.E.2d 486; *State ex rel. Moss v. Ohio State Hwy. Patrol Retirement Sys.*, 97 Ohio St.3d 198, 2002-Ohio-5806, 777 N.E.2d 259, ¶ 21. The retirement system's advocated construction of R.C. 2121.04(B) does not advance these interests.

**Conclusion**

{¶ 27} Based on the foregoing, Mager has established that the retirement system acted in an unreasonable, arbitrary, and unconscionable manner by ignoring the plain language of R.C. 2121.04(B) and withholding the retirement benefits from the decedent's personal representative when she was entitled to them under R.C. 3307.60. Therefore, we grant a writ of mandamus to compel the retirement system to pay Mager the retirement benefits withheld from the

decedent from the time she disappeared until the date she was declared dead by the Florida probate court.

Writ granted.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

_____

Davis Island Law, P.A., and Jeffrey A Blau; and Hohmann, Boukis, & Curtis, P.A., and Kenneth Boukis, for relator.

Richard Cordray, Attorney General, and John E. Patterson, Assistant Attorney General, for respondent.

_____